UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

WANDA REED,                          )
                                     )
            Plaintiff,               )
                                     )
      v.                             )    No. 4:05 CV 1789 DDN
                                     )
MICHAEL J. ASTRUE,[1]                )
Commissioner of Social Security,     )
                                     )
            Defendant.               )

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Wanda Reed for a period of disability insurance benefits under Title II and Title XVI of the Social Security Act (the Act), 42 U.S.C. § 401, et seq., and 42 U.S.C. § 1381, et seq., respectively. The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## Procedural Background

On January 7, 2004, plaintiff Wanda Reed applied for disability benefits. She alleged she became disabled on October 1, 1998, due to post-traumatic depression and a learning disability. (Tr. 40, 66.) She later amended her application to allege a disability onset date of July 28, 2003, at age 50, the date she last worked.[2] (Tr. 55.)

Following an evidentiary hearing on May 17, 2005, an administrative law judge (ALJ) issued a written opinion on June 19, 2005, denying benefits. (Tr. 13-22.) Because the Appeals Council denied review of

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is hereby substituted as defendant in this action. See also 42 U.S.C. § 405(g).

[2]On that date, plaintiff was fired from her position as a school bus driver because she had been charged with driving her private car off-duty while intoxicated. (Tr. 57.)

the ALJ's decision (Tr. 5-7), it became the final decision of the Commissioner for review in this action.

### **General Legal Principles**

The court's role on judicial review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court must consider evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as substantial evidence supports the Commissioner's decision, the court may not reverse it merely because there is substantial evidence that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to benefits on account of disability, a claimant must prove that she is unable to perform any substantial gainful activity due to any medically determinable physical or mental impairment, which would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); 1382c(a)(3)(A). The Commissioner's regulations provide a five-step procedure for generally determining whether someone is disabled under the Act. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (describing the framework); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner can find that a claimant is or is not disabled at any of the steps, that determination or decision is made and the next step is not reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At Step Four, the issue is whether the claimant can perform her past relevant work. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step the burden is on plaintiff to prove that she cannot perform her past relevant work. Eichelberger v. Barnhart, 390 F.3d 584, 591

(8th Cir. 2004). At this step, the ALJ determined that plaintiff could perform her past relevant work as a school bus driver. (Tr. 21.) For this reason, her applications for benefits were denied. (Tr. 21.)

### The ALJ's Decision

In the June 19, 2005 decision denying benefits, the ALJ found that plaintiff had not engaged in substantial gainful activity[3] since her alleged onset date of July 28, 2003. He found that the medical evidence established that she has marked obesity, minimal changes in the cervical spine, degenerative joint disease of the right knee, and a history of mild intermittent depression. (Tr. 21.)

The ALJ found that plaintiff maintained the residual functional capacity (RFC) "to perform the physical exertional and nonexertional requirements of work except probably for lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally, or doing more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling." The ALJ determined that plaintiff's RFC did not preclude her from performing her past relevant work as a school bus driver. He noted she had no substance abuse problem that precluded substantial gainful activity. (Id.)

The ALJ considered plaintiff's subjective complaints (Tr. 14), but found them not credible. The ALJ noted that plaintiff received unemployment benefits until April 2004, which the ALJ found inconsistent with her assertion that she cannot work, because to obtain those benefits, one must legally assert she is able and willing to work. The ALJ noted that plaintiff reported working in a flower shop as recently as July 2004, lifting heavy pots. He found her psychiatric care was not continuous. She quit working because she was fired. (Tr. 20.)

---

[3]The ALJ noted that he would reserve final judgment on whether plaintiff had performed substantial gainful activity, because she was receiving unemployment benefits, indicating she was willing and able to work, and reported that she had worked in a flower shop in July 2004. (Tr. 15.)

The ALJ considered her medical records, but did not find any condition that was disabling. Many conditions, such as her rhinitis,[4] did not cause long-term limitations or complications. Her knee pain improved after injections. He found that her alcohol use was not uncontrolled; she reported drinking only a few times a month, even though drinking was the reason she lost her last job. He found that her learning disorder did not preclude work, because some of her best earning years were after that diagnosis in 1997. He considered her depression or other mood disorders, and did not find them serious enough to render her unemployable. Her depression had not stopped her from working prior to being terminated from her job. Her knee pain did not stop her from driving a bus, or driving a car, and she did not walk with a cane or other assistance. (Tr. 16-20.)

### **Plaintiff's Grounds for Relief**

Plaintiff argues that the decision of the ALJ is not supported by substantial evidence. Specifically, she argues that (1) the ALJ failed to use the proper standard when determining her RFC; (2) the ALJ failed to properly consider her subjective complaints and the opinions of third party observers; (3) the ALJ failed to properly analyze her past relevant work; and (4) the ALJ failed to procure the testimony of a vocational expert.

### **Discussion**

#### **A. RFC**

Plaintiff argues that the ALJ did not use the proper standards when determining her RFC.

The RFC is "the most [a claimant] can still do despite" his or her "physical or mental limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). When determining plaintiff's RFC, the ALJ must consider "all relevant evidence," but ultimately the determination of the plaintiff's RFC is a medical question. <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001).

---

[4]Inflammation of the nasal mucous membrane. Stedman's Medical Dictionary at 1358 (25th ed. illustrated 1990).

-4-

As such, the determination of plaintiff's ability to function in the workplace must be based on some medical evidence. Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

The ALJ found that plaintiff maintained the RFC to:

> perform the physical exertional and nonexertional requirements of work except probably for lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally, or doing more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling.

(Tr. 21.)

Plaintiff argues that the ALJ did not comply with his duty to adequately develop the record. The ALJ has a duty to fully develop the record. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). However, "that duty arises only if a crucial issue is underdeveloped." Id. An ALJ does not have to order a consultive examination if the then current record is sufficient to decide whether the claimant is disabled. Matthews v. Bowen, 879 F.2d 422, 424-25 (8th Cir. 1989); see also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

This argument is without merit. The ALJ ordered a consultive examination.[5] Further, plaintiff does not allege what is missing from the record. See Ellis, 392 F.3d at 994.

Plaintiff also argues that the ALJ improperly discredited the opinion of James D. Reid, Ph.D.[6] "The opinion of a [medical source] who

---

[5]On March 31 and April 4, 2004, James D. Reid, Ph.D., performed a consultive psychological examination of plaintiff requested by the Social Security Administration. (Tr. 291-96.)

[6]Dr. Reid noted that plaintiff's chief complaints were post-traumatic stress disorder, depression, and a learning disability. In the first interview she was more withdrawn than in the second visit. Her appearance was appropriate. He diagnosed post-traumatic stress disorder and major depressive disorder, alcohol abuse, personality disorder, and a GAF of 65. He recommended continued treatment by a mental health professional. He thought she was slightly impaired in her ability to relate to others, in her social interaction, and was moderately impaired in her ability to understand stresses and pressures associated with day to day work activity, and adaptation. She was within normal limits in her ability to understand and follow instruction, and to maintain attention. (Tr. 291-96.)

-5-

examines a claimant once or not at all does not generally constitute substantial evidence." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). Here, Dr. Reid saw plaintiff twice, because during the scheduled March 31, 2004 visit, he forgot to administer the Wechsler Adult Intelligence Scale Test, and had plaintiff return on April 4 for this purpose. (Tr. 294). Therefore, his examination was effectively performed in the functional equivalent of one visit. The ALJ was warranted in not giving substantial weight to the opinion of Dr. Reid.

Further, Dr. Reid's opinion about plaintiff's "borderline range of intellectual functioning" was not consistent with other evidence on the record. Despite this diagnosis and plaintiff's diagnosed learning disability,[7] she remained gainfully employed as a bus driver for many years. Plaintiff reported being able to pay her bills, do household chores, and drive. Further, he assessed her with a Global Assessment of Functioning (GAF) Score of 65, which indicates "some mild symptoms." Diagnostic And Statistical Manual of Mental Disorders, 34 (4th ed. 2001).

The RFC determined by the ALJ is supported by substantial evidence on the record. No medical doctor ever placed any limitations on plaintiff because of her knee pain, or shoulder or neck pain. At most, she was told to "rest as needed." (Tr. 213.) A January 2005 x-ray showed only moderate degenerative joint disease in her knee. (Tr. 313.) She did not require assistance, such as a cane, to walk. The ALJ considered plaintiff's obesity and found no evidence it limited her abilities.

The record indicated that plaintiff's depression was not disabling. She sometimes did not take her medication. (Tr. 200, 205.) Dr. Reid assessed her with only mild symptoms. (Tr. 295.) The first record of her depression was a hospitalization in 1980, but she continued to work for 23 years. The ALJ noted that any problem plaintiff had with alcohol had not affected her ability to hold a job until 2003, and plaintiff reported drinking less now, only a couple of times a month. (Tr. 151, 326.) Dr. Lane found that plaintiff's mental condition gave her mild

---

[7]On December 19, 1997, plaintiff was diagnosed with a nonspecific learning disability. (Tr. 157.)

to no limitations in daily living. She experienced no side-effects from her Vioxx[8] or Zoloft.[9] (Tr. 108-14.)

The ALJ found no substantial evidence to support a disabling condition. The court agrees. While plaintiff suffered from depression, knee, shoulder, and neck pain, and a possible learning disability, none of these conditions limited her abilities to work. There is substantial evidence that plaintiff "can perform the physical exertional and nonexertional requirements of work except probably for lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally, or doing more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling." (Tr. 21.)

**Subjective Complaints and Third Party Observations**

Plaintiff argues that the ALJ did not properly consider her subject complaints and the testimony of other witnesses. The court disagrees.

The ALJ considered plaintiff's subjective complaints and lawfully found them not fully credible. "The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Factors to be considered include the claimant's daily activities; the duration, frequency, and intensity of pain; any precipitating factors; whether the claimant has been taking pain medication and the dose; and functional restrictions. Id.; Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003). The ALJ may not discredit subjective complaints based solely on personal observation. Polaski, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Singh v. Apel, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ who rejects such complaints must make an express credibility

---

[8]Vioxx is a medication used to treat pain. The FDA has since pulled it off the market. Webmd.com/drugs. (Last visited February 9, 2007.)

[9]Zoloft, or Sertraline, is used to treat depression. Webmd.com/drugs. (Last visited February 9, 2007.)

determination explaining the reasons for discrediting the complaints."
Id.

The ALJ properly discredited plaintiff's complaints of disabling pain and depression. Her knee pain complaints are not consistent with the medical evidence. No doctor placed limitations on her daily activities, and none opined that her knee condition was serious enough to be disabling. None recommended surgery or any aggressive treatment. In December 2004, plaintiff reported taking only Tylenol for the pain.[10] (Tr. 309-10.) Plaintiff complained that the knee pain made it difficult for her to bathe, but no observer ever reported that plaintiff suffered from a hygiene problem. She was able to drive, walk without assistance, care for a toddler, do laundry with minimal help, and shop despite her knee pain. (Tr. 96, 99, 101-07, 320.)

The ALJ noted that plaintiff must have expressed a willingness and ability to work because she received unemployment benefits after her termination from her bus driving job. (Tr. 20.) Further, she participated in a vocational assessment program from May to July 2004. There, she worked in a floral shop, among other positions. (Tr. 108-14.) A plaintiff's intention or actually working during the disability period is evidence she is able to work. Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994). She is able to do housework, babysit a three-year old, take care of her finances, and drive. See Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir. 1989). Plaintiff also did not leave her last job because of her alleged disabilities, but because she was charged with driving while intoxicated. Cf., Goff v. Barnhart, 421 F.3d 785, 788 (8th Cir. 2005) (plaintiff left work because she slapped patient, not because of disability).

The ALJ also noted that at the hearing plaintiff did not appear to be in any distress, and did not appear anxious or depressed. (Tr. 19.)

---

[10]At different times during her treatment, plaintiff took prescription pain killers, but often reported difficulty paying for them. She received several prescriptions free from the free clinic. Her lack of taking prescription pain killers cannot be attributed to an inability to pay for them. See Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992).

While the ALJ may not solely rely on his own observations, they may be considered with other evidence. Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993).

Third parties' observations are evidence to be considered, but can be discredited. See Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988) (third party testimony not credible when the third party has a financial interest in case). Plaintiff's daughter, Angela, reported that plaintiff was able to care for Angela's three-year old.[11] She also reported that plaintiff was able to take care of her daily needs, drive, and handle her own money, and that plaintiff liked to shop to relieve her depression.

The ALJ did not fully discuss the vocational assessment counselor's observations in his opinion, other than to mention that plaintiff had worked at a floral shop. However, the counselor's opinion is not substantial evidence of disability. The vocational counselor, Amy Menges, noted "plaintiff is interested in part-time work to support herself." (Tr. 109.) Menges's opinion, that plaintiff "is not ready at this time to pursue employment" is not consistent with other evidence in the record. The opinion was partially based on the counselor's opinion that plaintiff might be having knee surgery, which had not been scheduled nor seriously contemplated. (Tr. 109.) The counselor noted that plaintiff's depression medication made her appear drowsy; however, this was not noted by any other physician and plaintiff reported no side effects from her medication. Because of its inconsistency with the other evidence in the record, the ALJ was warranted in not crediting the opinion of the vocational counselor. See Hall v. Chater, 109 F.3d 1255, 1258 (8th Cir. 1997).

---

[11]Angela Hendrix reported that plaintiff watched her three year-old son. Plaintiff and she lived together for about a month at one time. Plaintiff needed reminding to do household chores; she prepares sandwiches, frozen meals, and some complete meals; she cleans, does laundry, and irons. Plaintiff shops for herself but not as often as previously because of her depression. She reported that plaintiff was often in a negative mood. (Tr. 99-107.)

-9-

**Past Relevant Work**

Plaintiff argues the ALJ did not properly assess her past relevant work. The ALJ must make explicit findings regarding the actual physical and mental demands of a claimant's past work and compare the actual demands of the past work with the claimant's RFC. Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999). The ALJ may refer to the Dictionary of Occupational Titles (DOT) to determine the description of plaintiff's past work. Id.

Here, the ALJ considered the actual physical and mental demands of plaintiff's work based on her own description of how she performed it. (Tr. 18.)[12] The ALJ determined that plaintiff's RFC did not prevent her from performing this work. Further, plaintiff had performed her job as a bus driver while experiencing the ailments that she alleged rendered her disabled, including the mental problems and her learning disability and intelligence level. (Tr. 18.) An ALJ may properly consider that a plaintiff successfully performed her job with the cognitive abilities she currently possesses. Roberts v. Apfel, 222 F.3d 466, 468-69 (8th Cir. 2000). Further, there is no indication in the record that plaintiff's knee pain would prevent her from driving a bus; plaintiff continued to drive a car and there is no medical evidence supporting an inability to drive.

**Vocational Expert Testimony**

Plaintiff also argues that the ALJ erred by not procuring VE testimony because she has nonexertional impairments. "The testimony of a VE is required only when the claimant carries his initial burden of showing that he is incapable of performing past relevant work and the claimant has a nonexertional injury." Roe v. Chater, 92 F.3d 672, 675

---

[12]Plaintiff stated that her job duties as a bus driver included picking up children at their destinations, taking them to school, and returning them to their homes in the evening. She controlled the children's behavior and kept her bus clean. She reported walking one hour per day, standing for a half-hour per day, sitting for three and one half hours per day, climbing for 15 minutes per day, and handling or grasping big objects four hours per day. The heaviest weight she lifted was 10 pounds. (Tr. 80.)

(8th Cir. 1996). Here, the ALJ lawfully determined that plaintiff could perform her past relevant work. (Tr. 21.) As such, VE testimony was not required.

    An appropriate Judgment Order affirming the final decision of the Commissioner of Social Security is issued herewith.


                                                    /S/ David D. Noce
                                             **DAVID D. NOCE**
                                             **UNITED STATES MAGISTRATE JUDGE**


Signed on February 26, 2007.